| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **FOR PUBLICATION** |

-------------------------------------------------------------x

In re:                                                                                       Chapter 11

45 JOHN LOFTS, LLC,                                              Case No. 16-12043 (SHL)

              Debtor.

-------------------------------------------------------------x

45 JOHN LOFTS, LLC,

              Plaintiff,

              v.                                                           Adv. No. 17-01179 (SHL)

MERIDIAN CAPITAL GROUP LLC,
CROWN MANSION LLC, BO JIN ZHU,
MEGA INTERNATIONAL COMMERCIAL
BANK, CONGREGATION KAHAL MINCHAS
CHINUCH, CHAIM SCHIYA BABAD,
RELIABLE ABSTRACT CO., LLC,
ABRAHAM MANDEL, TOBY MANDEL,
SILVER GOLD GROUP LLC,
JOSEPH BRUNNER, JOSEPH SEGEL,
DAVID JANKLOWICZ, MORRIS LOWY,
MITCHELL KIRSCHNER, JERRY LOWY,
ISAAC GREENFELD, AND
RENATUS PORTFOLIO COMPANY, LLC,

              Defendants.

-------------------------------------------------------------x

## MEMORANDUM OF DECISION

**A P P E A R A N C E S :**

**WILK AUSLANDER LLP**
*Counsel for Plaintiff/Debtor*
1515 Broadway, 43rd Floor
New York, NY 10036
By:    Eric J. Snyder, Esq.

**SILVERMAN SHIN & BYRNE PLLC**
*Special Counsel for Plaintiff/Debtor*
Wall Street Plaza
88 Pine Street, 22nd Floor

New York, New York 10005
By:   Peter R. Silverman, Esq.
      Donald F. Schneider, Esq.

**MORITT HOCK & HAMROFF LLP**
*Counsel for Defendant Crown Mansion LLC*
400 Garden City Plaza
Garden City, New York 11530
By:   Alexander D. Widell, Esq. [Notice of Appearance at ECF 128]
      Theresa A. Driscoll, Esq.

**THE LAW OFFICE OF JEREMY ROSENBERG**
*Counsel for Defendant Crown Mansion LLC and Bo Jin Zhu*
777 Chestnut Ridge Road, Suite 202
Chestnut Ridge, New York 10977-6221
By:   Jeremy Rosenberg, Esq. [Notice of Appearance at ECF 59]

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of Elizabeth Chen (the "Movant") on behalf of Crown Mansion LLC ("Crown Mansion") to vacate the default judgment issued by this Court (the "Motion") [ECF 129].[1] The Court granted the default against defendants Crown Mansion and Bo Jin Zhu ("Mr. Zhu") based on their failure to comply with Court orders in anticipation of trial that required pretrial disclosures, the submission of witness lists, and written declarations of direct testimony. Based on that default, the Court entered a judgment against Crown Mansion on May 27, 2022 [ECF 114] and an amended judgment on August 24, 2022 [ECF 136]. Plaintiff 45 John Lofts LLC ("Plaintiff" or the "Debtor") filed an opposition to the Motion (the "Opposition") and Movant filed a reply in further support of the Motion (the "Reply") [ECF 137 and 138]. For the following reasons, the Motion is denied.

---

[1]   References to the Case Management/Electronic Case Filing ("ECF") docket are to Adv. Pro. No. 17-01179 (SHL) unless otherwise specified.

2

**BACKGROUND**

The Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code in July 2016. [Case 16-12043, ECF 1]. The Debtor's sole asset was a vacant eighty-four unit condominium building located at 45-49 John Street (the "Property"), which had been purchased in or around March 2014. Complaint ¶¶ 30-31 [ECF 1]. The Debtor commenced an adversary proceeding that, broadly speaking, sought the return of a $14,330,000 deposit paid in contemplation of the Debtor's sale of the Property under a Purchase and Sale Agreement ("PSA") of September 2014. The Debtor did not receive those funds, which were used for purposes unrelated to the Debtor. *See In re 45 John Lofts, LLC*, 599 B.R. 730 (Bank. S.D.N.Y. 2019). The Debtor alleges that the deposited funds were fraudulently conveyed away from the Debtor by some of the Debtor's principals and given to other parties as part of a series of complicated transactions for the personal benefit of those principals. The Debtor has sued to recover those fund from various number of parties who received the funds or who received the benefit of those transfers.

The claims against Crown Mansion arise out of a transfer of a portion of the deposit (some $2 million) disbursed to Mega International Commercial Bank ("Mega"). Complaint ¶¶ 70-74. The complaint explains that Crown Mansion had previously borrowed $2,7000,000 from Mega, with that loan being guaranteed by Mr. Zhu and secured by a mortgage. *See* id. ¶¶ 71, 74; *see also* Exhibit K to the Declaration of Alexander Widdell [ECF 131-11]. The complaint further alleges that the transfer of the $2,827,312.77 to Mega benefited Crown Mansion and Mr. Zhu because it reduced or eliminated their liability to Mega. Complaint ¶ 74. The Debtor alleged that Mr. Zhu controlled Crown Mansion and was in a position of control at the time of the events described in the complaint. *Id.* at ¶ 11. In this adversary proceeding, the Debtor seeks

3

to recover the funds as a fraudulent conveyance under both federal and New York law. *Id.* at ¶¶ 129-67.

**A. Procedural and Factual History**

    1. <u>Crown Mansion's Participation in the Lawsuit</u>

This action was commenced on or about October 10, 2017. *Id.* The Plaintiff served Crown Mansion by delivering a copy of the summons and notice of pretrial conference, as well as the complaint, to 41-68 Main Street, Flushing, NY, 11355 (the "Flushing Address") and to 11 East Broadway, Suite 7B, New York, New York, 10038 (the "East Broadway Address") on October 13, 2017. *See* Affidavit of Service [ECF 4]. The East Broadway Address was designated as the address for service in Crown Mansion's filing with the New York Secretary of State, while the Flushing Address was the address listed for Crown Mansion in the Yellow Pages directory. Opposition ¶ 22, Exh. C, D. Through attorneys Becker, Glynn, Muffly, Chassin & Hosinski LLP, Mr. Zhu and Crown Mansion filed a joint motion to dismiss the complaint in December 2017 [ECF 16-18]. Plaintiff opposed the motion; Mr. Zhu and Crown Mansion filed a reply in further support of the motion. *See* ECF 41-42, 44 -45. The Court denied Mr. Zhu and Crown Mansion's motion. *See In re 45 John Lofts, LLC*, 599 B.R. 730 (Bankr. S.D.N.Y. 2019). After that decision, the Law Office of Jeremy Rosenberg was substituted as counsel for Crown Mansion and Mr. Zhu. *See* ECF 59. Through their new counsel, Crown Mansion and Mr. Zhu answered Plaintiff's complaint in late July 2019. Answer to Complaint [ECF 61]. In late October 2020, the Court entered an order directing various parties, including Mr. Zhu and Crown Mansion, to engage in mediation. *See* Mediation Order [ECF 76]. It is undisputed that both Mr. Zhu and Crown Mansion participated in the mediation process with the continued representation of the Law Office of Jeremy Rosenberg. *See* Hr'g Tr., 28:4-10 (March 23, 2022) [ECF 126].

After mediation failed, the case moved forward. *See* Hr'g Tr., 4:24-25 (March 16, 2022) [ECF 119].

    2. <u>Crown Mansion's Default</u>

On February 21, 2022, this Court issued a scheduling and pretrial order that set the matter down for trial as to various defendants on March 29, 2022. *See* Scheduling and Pretrial Order dated February 21, 2022 [ECF 87].[2] The February 2022 scheduling order also scheduled a final pretrial conference on March 17, 2022 at 10:00 A.M., and set deadlines for the trial parties to exchange information in preparation for trial. *Id*. More specifically, the scheduling order provided that:

- the trial parties were to use their best efforts to agree on a joint exhibit book;

- Plaintiff was directed to send to the trial defendants a Statement of Undisputed Facts ("SOUF") on or before February 7, 2022, to which the trial defendants were to submit responses by February 21, 2022, with efforts to agree upon a SOUF by February 28, 2022;

- the trial parties were required to exchange witness lists on or before March 15, 2022;

- the trial parties were required to submit declarations or affidavits of direct witnesses to chambers on or before March 22, 2022.

*See id.*

On March 9, 2022, some twenty days before the scheduled trial, counsel for Plaintiff informed the Court that the Plaintiff had not received a response from any of the trial Defendants to Plaintiff's SOUF and exhibits, including Mr. Zhu and Crown Mansion. *See* Letter Regarding

---

[2] The defendants scheduled to go to trial consisted of Bo Jin Zhu, Crown Mansion, Mega, Congregation Kahal Minchas Chinuch and Chaim Schiya Babad (the "trial parties.") *See* Scheduling and Pretrial Order dated February 21, 2022 ¶ 3. However, Plaintiff reached a settlement agreement with Mega before trial. *See* Motion of Debtor to Approve a Settlement Agreement between the Debtor and Mega International Commercial Bank [ECF 122]; Order Granting Motion of Debtor to Approve Settlements [sic] Agreement by the Debtor and Mega International Commercial Bank [ECF 134].

5

Pretrial Conference Schedule for March 17, 2022, dated March 9, 2022 [ECF 88]. At a pretrial conference held on March 16, 2022, Mr. Rosenberg appeared as counsel for Mr. Zhu and Crown Mansion; he agreed that both Mr. Zhu and Crown Mansion had failed to comply with their pretrial obligations. *See* Hr'g Tr., 7:6-15 (March 16, 2022). Mr. Rosenberg further explained that he had lost the ability to communicate with his clients, asserting "my clients are not getting back to me." *Id.* at 7:14. The Court set a final pretrial conference for March 18, 2022 at 10:00 AM and directed Mr. Zhu to appear via phone. *See id.* at 11: 1-8. At the March 18th hearing, Mr. Zhu again failed to appear. *See* Hr'g Tr., 4:3-13 (March 18, 2022) [ECF 120]. As a result, the Court issued an Order to Show Cause on March 18, 2022 (the "OSC") setting a hearing for March 23, 2022 to determine the sanctions to be leveled against Crown Mansion and Mr. Zhu for their failure to comply with the Court's prior orders and their pretrial obligations [ECF 90].

The OSC hearing was held March 23, 2022, less than a week before trial. *See* Hr'g Tr. (March 23, 2022) [ECF 126]. The Court was careful to schedule the OSC hearing before the trial so as to give parties an opportunity to cure their non-compliance. In addition to Mr. Rosenberg, Alexander Widdell appeared from the firm Moritt Hock & Hamroff LLP on behalf of Elizabeth Chen. *See generally* Hr'g Tr. (March 23, 2022). At the hearing, Mr. Widdell asserted that Ms. Chen was the 99% owner of Crown Mansion and that Ms. Chen first learned of this case when she received a copy of the OSC. *Id.* at 3:15-19. Mr. Widdell stated that Mr. Zhu had effectively defrauded Crown Mansion by directing its defense of the lawsuit despite having no authority to do so. *Id.* at 31:9-11. Despite questioning by the Court at the hearing regarding Mr. Widdell's statements, however, Mr. Widdell was unable to produce documents to substantiate his claims regarding Ms. Chen's authority to act on behalf of Crown Mansion or Mr. Zhu's lack of authority to do the same, nor were any definitive representations made to that effect. *Id.* at

6

12:18-13:9; 31:9-19; 32:1-33:11.  For example, in response to Mr. Widdell's general assertion that fraud occurred, the Court inquired about counsel's claim that tax returns supported Ms. Chen's claim of ownership.

> MR. WIDELL: I was told it was Crown Mansion's.  I didn't see [the tax returns].  I spoke to Ms. Chen's employee.
>
> THE COURT: Then I don't really know how you can make that representation as an officer of the Court, given all the circumstances here. That seems a rather perilous thing to do.
>
> MR. WIDELL: I'm telling you that Crown Mansion –
>
> THE COURT: You can tell me that somebody else told you –
>
> MR. WIDELL: Somebody else told me.
>
> THE COURT: -- that there are tax returns. And that doesn't help me very much.

Hr'g Tr., 32:10-20 (March 23, 2022).

With the trial six days away, and given the lack of evidence to take action based on Ms. Chen's assertions, the Court at the OSC hearing granted a default against both Mr. Zhu and Crown Mansion for failure to comply with their obligation for the upcoming trial, and the Court directed counsel for Plaintiff to submit an order to that effect.  *Id.* at 30: 2-7.  The trial subsequently proceeded against the remaining defendants—Chaim Schiya Babad and Congregation Kahal Minchas Chinuch—starting on March 29, 2022 and ending on March 30, 2022.  No one appeared at the trial on behalf of Crown Mansion, Mr. Zhu, or Ms. Chen.  Based on the bench ruling of default, this Court entered a judgment on May 27, 2022 in the amount of $2,827,312.77 against both Mr. Zhu and Crown Mansion.  *See* ECF 114.  Notice of entry of the judgement was filed June 14, 2022.  *See* ECF 118.  No pleadings were filed on behalf of Crown Mansion, Mr. Zhu, or Ms. Chen after the OSC hearing in March and before the notice of entry of judgment in June.  In late June 2022, Plaintiff filed a motion to amend certain language in the

judgment order. *See* ECF 121. No opposition was filed in response to that motion, and the motion to amend the judgment was granted on August 24, 2022. *See* ECF 135. The amended judgment was entered the same day. *See* ECF 136.

    3. <u>Movant's Motion to Vacate</u>

On or about August 3, 2022 — more than four months after the OSC hearing — the law firm of Moritt Hock & Hamroff LLP filed a notice of appearance on behalf of Crown Mansion.[3] *See* ECF 128. This Motion was filed the same day. A hearing was held on the Motion in late September 2022, at which time the Motion was taken under advisement.

## DISCUSSION

Movant seeks relief from the judgment pursuant to Fed. R. Civ. P. 60(b), which is applicable to this adversary proceeding by virtue of Bankruptcy Rule 9024.

Rule 60(b) provides that the Court may relieve a party from a final judgment, order or proceeding due to:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). While the Rule provides a mechanism to be relieved from a final judgment or order, "[a] motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of*

---

[3]     The Court notes that a notice of appearance, rather than a consent to substitute counsel, was filed. Therefore, it appears that either or both of the Law Offices of Jeremy Rosenberg and Moritt Hock & Hamroff LLP may now represent Crown Mansion.

*Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). "Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *In re Enron Corp.*, 2003 WL 1562202, at *12 (Bankr. S.D.N.Y. Mar. 21, 2003) (quoting *Nemaizer v. Baker,* 793 F.2d 58, 59-60 (2d Cir. 1986)). In considering a motion to vacate a default judgment, however, the Court notes the strong preference for resolving disputes on the merits. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). Indeed, a default judgment is "the most severe sanction which the court may apply." *Id.* (*citing Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995)). Nevertheless, whether to grant a motion for relief under Rule 60(b) is within the discretion of the court. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (*citing Montco, Inc. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754, 760 (2d Cir. 1981)).

In considering a motion for relief from judgment, "[t]he burden of proof is on the party seeking relief from judgment." *Int'l Bhd. of Teamsters*, 247 F.3d at 391; *see also Green ex rel. Est. of Green v. Advanced Cardiovascular Imaging*, 2009 WL 3154317 at *2 (S.D.N.Y. Sept. 30, 2009). In support of its burden, the movant must present "highly convincing" evidence. *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987).

Here, Movant invokes the provisions of Rule 60(b)(1) and 60(b)(6) as the basis for their motion.

### A. Motion to Vacate Pursuant to Fed. R. Civ. P. 60(b)(1)

A party may seek relief from a judgment under Rule 60(b)(1) based on a showing of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1); *see also Foley v. United States*, 645 F.2d 155, 157 (2d Cir. 1981). A motion made pursuant to Fed. R. Civ. P. 60(b)(1) must be made within one year of the entry of the judgment or order. *Id.*

9

In considering whether to relieve a party from default, the moving party must demonstrate an excusable default. To determine whether a default is excusable, courts will consider the wilfulness of the default, the existence of a meritorious defense, and the prejudice to the non-defaulting party should the default be vacated. *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001). These factors are non-exclusive equitable factors. *William v. City of New York*, 727 F. App'x 30, 31 (2d Cir. 2018). "No one factor is determinative, but each is to be weighed and balance with the others . . . . The [trial] court must assess the individual circumstances of a given case and . . . . evaluate the credibility and good faith of the parties. *Sec. & Exch. Comm'n v. Patel*, 2022 WL 2704099, at *5 (D. Conn. July 12, 2022) (internal citations and quotations omitted).

"Generally, courts require that the evidence in support of the motion to vacate a final judgment be highly convincing, that a party show good cause for the failure to act sooner, and that no undue hardship be imposed on other parties." *Kotlicky*, 817 F.2d at 9 (internal citations and quotations omitted). "The subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not. At the same time, we recognize that the degree of negligence in precipitating a default is a relevant factor to be considered . . . . Gross negligence can weigh against the party seeking relief from a default judgment, though it does not necessarily preclude relief." *Am. All. Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir. 1996). Excusable default includes not only circumstances beyond the control of the movant, but also situations attributable to negligence. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993). The standard for willfulness includes conduct which is deliberate, egregious, or evidences bad faith. *In re JWP Info. Servs., Inc.*, 231 B.R. 209, 212 (Bankr. S.D.N.Y. 1999).

1. <u>Whether Crown Mansion's Default was Excusable</u>

Turning to the first prong regarding the willfulness of the default, the Movant has not met the burden of showing through "highly convincing evidence" that there is good cause for the failure to act here.

The Movant's excuse hinges on the assertion that Ms. Chen, who is now asserted to be the sole manager of Crown Mansion and the sole person with authority to act on behalf of the corporation, had no knowledge of the lawsuit until approximately March 22, 2022. *See generally* Declaration of Elizabeth Chen (the "Chen Declaration") [ECF 132]. More specifically, Ms. Chen alleges that she is the sole shareholder of American Chengyi Investment Group, Inc. ("American Chengyi"), which owns 74% of the membership interests of Crown Mansion; the Elizabeth Chen Family 2019 Irrevocable Trust purportedly owns another 22% of Crown Mansion. Chen Declaration ¶ 1. Based on documents submitted by the Movant, American Chengyi appears to have obtained its ownership interest in Crown Mansion in or around September 2017, about a month before to the commencement of this action. *See* Second Amended and Restated Operating Agreement of Crown Mansion [ECF 132-2]. Ms. Chen was then purportedly appointed as the manager of Crown Mansion and vested with "complete authority and exclusive control over the management of the business and affairs" of Crown Mansion. *Id.* at Section 5.1.[4] Ms. Chen maintains that Mr. Zhu, despite lacking authority to act on behalf of Crown Mansion, hired attorneys to defend not only himself but also Crown Mansion in this adversary proceeding. Chen Declaration ¶¶ 4-5. Ms. Chen maintains that, because

---

[4] The manager's authority included the power to hire professionals such as attorneys and defend legal actions. *See* Second Amended and Restated Operating Agreement of Crown Mansion Section 5.1(c).

11

service of the complaint in this action was made to Mr. Zhu at the East Broadway Address,[5] she did not learn of the lawsuit until the day before the March 23rd OSC hearing when Mr. Rosenberg advised someone from Ms. Chen's office about the existence of the lawsuit. *Id.* ¶ 10. Ms. Chen asserts that the sole reason for the default is the "misconduct" of Mr. Zhu who, "from the outset, surreptitiously and without authority, assumed control of this proceeding on behalf of Crown Mansion and then failed to participate during the pretrial phase." Movant's Memorandum of Law at 10 [ECF 130]. The clear implication in the Motion is that Ms. Chen would have ensured that Crown Mansion met all of its obligations in this case if she knew of the lawsuit.

In opposing the Motion, Plaintiff argues that Crown Mansion's default is not excusable because the lack of notice is its own fault. Plaintiff points to Crown Mansion's failure to update its registration with the Secretary of State to change the agent for service from Mr. Zhu to Ms. Chen when Ms. Chen took on the role of Manager. *See generally* Opposition. Despite Ms. Chen's allegation that she became Crown Mansion's manager in 2017, she failed to update the corporate designation with the New York Secretary of State until 2020, nearly three years later. Opposition ¶ 68; Exhibit F to Opposition [ECF 137-6]. As a result, Ms. Chen was not served as Crown Mansion's representative when this lawsuit was filed; Mr. Zhu was served instead as Crown Mansion's designated agent with the New York Secretary of State. *See* Exhibit A to Opposition [ECF 137-1].

Indeed, the Movant does not dispute that it failed to update the registered agent for service with the New York Secretary of State once management of Crown Mansion changed. Such an admission is significant. In assessing whether such default is excusable, New York

---

[5] The parties do not dispute that service on Mr. Zhu at the East Broadway Address was proper, as Mr. Zhu and the East Broadway Address were listed as the service agent and address for Crown Mansion.

courts consider the length of time the service address has not been kept current. *Eugene Di Lorenzo, Inc. v. A.C. Dutton Lumber Co.*, 67 N.Y.2d 138, 143 (1986). New York State courts have routinely held that lack of notice of a lawsuit does not constitute an excusable default if the reason the defendant did not receive the notice is because the defendant failed to update its address with the Secretary of State for a lengthy period of time. *See, e.g., Baez v. Ende Realty Corp.*, 911 N.Y.S.2d 68 (App. Div. 1st Dept. 2010); *Lawrence v. Esplanade Gardens, Inc.*, 623 N.Y.S.2d 586 (App. Div. 1st Dept. 1995); *John v. Arin Bainbridge Realty, Corp.*, 46 N.Y.S.3d 589 (App. Div. 1st Dept. 2017). Assuming that Ms. Chen, through American Chengyi, took control of Crown Mansion in 2017, there was a delay of approximately two and a half years before the Movant updated its agent for service of process, a delay that severely undermines the Movant's claim of excusable neglect. *See Green*, 420 F.3d at 108 (*citing Am. Alliance Ins. Co.*, 92 F.3d at 60-61 (2d Cir. 1996)) (noting that "the degree of negligence in precipitating a default is a relevant factor to be considered").

In considering the willfulness of the default, and whether it may be considered excusable, the Court also looks to the length of time from the default to the party's effort to remedy the default. While motions under Fed. R. Civ. P. 60(b)(1) may be made no later than one year after the entry of the judgment, the motion must also be made within a "reasonable time." Fed. R. Civ. P. 60(c)(1). What constitutes a reasonable time depends on the particular circumstances of a case. *See Wang v. IBM*, 839 Fed. Appx. 643, 646 (2d Cir. 2021). "Courts in this circuit 'have been unyielding in requiring that a party show good reason for his failure to take appropriate action sooner.'" *Freedom, N.Y., Inc. v. United States*, 438 F. Supp. 2d 457, 465 (S.D.N.Y. 2006) (*citing Stonewall Ins. Co. v. Nat'l Gypsum Co.*, No. 86 Civ. 9671(JSM), 1992 WL 51567, at *6 (S.D.N.Y. Mar.9, 1992)). Courts have found a delay to be unreasonable when the moving party

13

did not act promptly when the information on which the motion was based became available. *Wyche v. Advanced Drainage Sys., Inc.*, 332 F.R.D. 109, 116 (S.D.N.Y. 2019) (finding a four month delay to be unreasonable when no explanation was provided for failing to immediately act on relevant information).

The Movant here has not acted within a reasonable time. Over four months elapsed between the March 23rd hearing — when the Court found Crown Mansion to be in default — and the filing of this Motion. During those four months, Movant did not seek reconsideration of the Court's decision regarding default, did not participate in the trial, did not oppose the entry of the judgment, did not appeal the court's order entering judgment, and did not make a formal application to adjourn the trial.[6] The Movant does not provide a justification for this delay. Indeed, none of the information provided by Movant in the Motion would appear to be difficult to obtain for a person who is the owner or manager of Crown Mansion. Given the record, the Movant's delay in seeking relief weighs strongly against vacatur of the default.[7]

There are also factual issues that undermine Ms. Chen's position. For example, there are reasons to question Ms. Chen's assertion that she is the 96% owner of Crown Mansion and that

---

[6] Plaintiff argues that failure to file a notice of appeal precludes a motion to vacate pursuant to Fed. R. Civ. P. 60(b). Memo. in Opposition ¶¶ 48-51. A significant body of case law supports this proposition. S*ee, e.g., Schildhaus v. Moe*, 335 F. 2d 529, 531 (2d Cir. 1964); *In re Shen*, 501 B.R. 216, 221 (Bankr. S.D.N.Y. 2013) ("Rule 60(b) was not intended as a substitute for a direct appeal from an erroneous judgment"). Nevertheless, the Second Circuit has held that while an appeal is a method of addressing a default judgment, the more typical path is to move for relief under Rule 60(b). *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001).

[7] Ms. Chen explains that the reason she did not act earlier was because she wanted to do due diligence and take the time to investigate. Hr'g Tr., 9: 8-14 (September 21, 2022) (statement of counsel). But no explanation has been provided for why more than four months after the OSC hearing was needed to assemble the facts presented in the Motion, which seems largely or exclusively within Ms. Chen's knowledge or control. A realization that different choices should have been made at an earlier point in the litigation does not provide sufficient grounds to vacate a default. *See Nemaizer v. Baker*, 793 F.2d 58, 59-60 (2d Cir. 1986) ("Although obviously better informed than foresight, an argument based on hindsight is not a ground upon which a court may grant Rule 60(b) relief.").

14

she alone had authority to act on behalf of Crown Mansion.[8] As noted above, Ms. Chen asserted that she owns 74% of Crown Mansion through her ownership of American Changyi and owns 22% of Crown Mansion through the Elizabeth Chen Family 2019 Irrevocable Trust. Chen Declaration ¶ 1. But while the Second Amended and Restated Operating Agreement of Crown Mansion confirms American Chengyi Investment Group's 74% ownership interest, (*see* Exhibit B to the Chen Declaration [ECF 132-2]), no such proof is provided regarding the alleged ownership interest of the Elizabeth Chen Family 2019 Irrevocable Trust. Similarly, while Ms. Chen argued that her 99% ownership was verified by her 2020 tax returns (Hr'g Tr., 17:7-8 (March 23, 2022)) no such tax returns were ever provided to the Court. This is despite these tax returns being the subject of inquiry at the OSC hearing, months before the Motion was filed.[9] Moreover, numerous other documents raise questions about whether Ms. Chen has exclusive ownership and control of Crown Mansion, including documents that name parties other than Ms. Chen and American Chengyi as owners and managers of Crown Mansion. *See, e.g.*, Mortgage Reaffirmation Agreement signed by Gui Yang, denominated as the managing member of Crown Mansion on August 17, 2022 (Exhibit G to the Memo. in Opposition [ECF 137-7]); *see also* Corporate Ownership Statement of Crown Mansion, dated December 4, 2017, disclosing that 88 Maple Realty LLC owns more than 10% of the equity interests of Crown Mansion (Exhibit E to the Memo. in Opposition [ECF 137-5]).[10] These factual inconsistencies undermine Ms. Chen's

---

[8] Though Mr. Widdell stated that Ms. Chen was the "99 percent member of the defendant Crown Mansion LLC," *see* Hr'g Tr. 3:16-17 (March 23, 2022), Ms. Chen's Declaration states she owns 74% of Crown Mansion through her ownership interest in American Chengyi and 22% of Crown Mansion through the Elizabeth Chen Family 2019 Irrevocable Trust, for a total ownership interest of 96%. Chen Declaration ¶ 1.

[9] Nor was any documentary proof provided to support the assertion that Ms. Chen is the sole shareholder of American Chengyi.

[10] Both of these documents are dated after Ms. Chen purported to obtain her 74% interest through American Chengyi. The Court has not been provided with details of the timing of ownership of Crown Mansion through the

contention that she is the "sole manager" of Crown Mansion, Chen Declaration ¶ 1, and that any actions taken by Mr. Zhu were a usurpation of her authority. The Movant has provided no explanation for these inconsistencies.

In the same vein, the Court is concerned about the lack of information about Ms. Chen's relationship or direct contact, if any, with Mr. Zhu. During the hearing that occurred on September 21, 2022, counsel for the Movant asserted that the relationship between Ms. Chen and Mr. Zhu was "arms length." Hr'g Tr., 13: 15 (September 21, 2022) [ECF 140]. But despite probing by the Court, counsel for the Movant was unable to provide any detail to illuminate the nature of that relationship other than his conclusory statements. *Id.* at 13:18-14:18. The lack of fulsome information regarding Ms. Chen's contact with Mr. Zhu during the pendency of this litigation further undercuts Movant's assertion that Mr. Zhu was a rogue actor and Ms. Chen lacked any knowledge of the instant case.[11]

2. Meritorious Defense

In addition to showing that the default was excusable, the proponent of a motion to vacate pursuant to Fed. R. Civ. P. 60(b) must also show a meritorious defense. *Pecarsky,* 249 F.3d at 171. To satisfy the criterion of a "meritorious defense," the defense need not be ultimately persuasive at this stage. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. All. Ins. Co.*, 92 F.3d at 61 (internal citations omitted).

---

Elizabeth Chen Family 2019 Irrevocable Trust, although the title of the trust suggests such ownership came to be more than a year after this lawsuit began and the motion to dismiss was filed.

[11]    Ms. Chen does affirmatively state that "[a]t no time since this action was commenced has Zhu advised me of the existence of this lawsuit." Chen Decl. ¶ 7. However, this limited representation does not provide any illumination as to what other communications between Mr. Zhu and Ms. Chen may have occurred, particularly regarding the Mega loan, the payment of which is alleged to constitute the benefit that Crown Mansion received as a result of the transfer.

16

Ms. Chen asserts that, as the Mega loan is still outstanding, it is evident that Crown Mansion received no benefit from the transfer of funds (unlike Mr. Zhu, whose obligation was satisfied). *See* Movant's Memo. in Support at 12. She asserts that the current holder of the Mega loan commenced an action to foreclose the mortgage and collect the loan and, therefore, it is obvious that Crown Mansion did not obtain any benefit from the transfer. *Id.* at 15; Exhibit M to the Declaration of Alexander Widdell [ECF 131-130]. But Ms. Chen's carefully crafted representations raise questions. The fact that the Mega loan is outstanding does not eliminate the possibility that Crown Mansion benefitted from the transfer in the form of a paydown of the Mega loan. Indeed, it is unclear how or why Mr. Zhu's obligation as a guarantor of the loan could be satisfied if the same loan was still outstanding. To further muddy the waters, the Debtor notes that, despite Mega declaring the loan to be in default, no action to foreclose was taken by the subsequent holders of the note, both of which were entities either controlled by Mr. Zhu or related to other beneficiaries of the Debtor's funds; this circumstance apparently only changed when the mortgage was assigned to an apparently unrelated third party, JLM Capital LLC, on December 24, 2021. *See* Exhibit M to the Declaration of Alexander Widdell [ECF 131-13].

But while there are significant questions about the Movant's alleged meritorious defense, the Movant has provided this Court with issues of fact to resolve such that it has satisfied this prong, even if in a less than resounding fashion.

    3. <u>Whether Vacatur will Cause Undue Prejudice to the Debtor</u>

Last but not least, the Court must also consider whether vacatur of the judgment would cause undue prejudice to the Plaintiff. Mere delay is not a sufficient basis for a finding of prejudice; something more is needed. *See Green*, 420 F.3d at 110.

17

Vacatur of Crown Mansion's default here would cause significant prejudice to the Debtor. Ms. Chen's efforts to vacate the default comes at a time when the Debtor's claims against all other defendants in these matters have been tried, settled, or adjudicated, and the Debtor is preparing to make distributions in the bankruptcy case. Opposition ¶ 76. The Debtor further asserts that, should Crown Mansion's default be excused, Crown Mansion would effectively get a "do-over" on the merits, but with the additional benefit of Debtor's evidence and strategy as reflected in the concluded trial against defendants Chaim Schiya Babad and Congregation Kahal Minchas Chinuch. *Id.* at ¶ 77.

The Court agrees, finding this case similar to *Kuntz v. Pardo*, 160 B.R. 35 (S.D.N.Y. 1993) (Sotomayor, J.). In that case, the Bankruptcy Court had entered an order approving a trustee's final report and account in a longstanding bankruptcy case. The party appealing that order had failed to timely designate a record on appeal and sought reinstatement. In considering the motion, the District Court found prejudice to the trustee, noting that because the estate appeared poised to make final distributions and wind-up the long bankruptcy, allowing late prosecution of the appeal would further delay the trustee in closing the estate and would prejudice creditors. *See id.* at 39. The Court also noted that the deadlines for filing an appeal were based on the date on which the notice of appeal was filed — an act fully within the movant's control. *Id.* Here, too, Crown Mansion could have ensured that the proper person received notice of the suit had they met their obligations. Further, Crown Mansion's default occurred prior to the scheduled trial date; despite being on notice of the default, Ms. Chen chose not to present her evidence earlier to seek relief from default. Allowing the Movant to force the Debtor to once again try their case but with a defendant who now has a strategic and factual edge, would cause significant prejudice.

In an apparent attempt to mitigate the prejudice that would come from relitigating issues that have already been tried by the Debtor, Movant's counsel offered to stipulate that it would only raise defenses to the recovery of the avoided Mega transfer under Section U. S.C. § 550(a) of the Bankruptcy Code. *See* Letter of Theresa A. Driscoll, dated September 21, 2022. [ECF 139]. While such a stipulation would limit the need to relitigate certain issues, such as the insolvency of the Debtor, it would not alleviate the burden to the Debtor from the delay in finalizing the administration of the estate and would not avoid the additional costs to the Debtor from a second trial on substantially related issues to the already completed trial of the remaining defendants.[12] Further, a second trial raises the specter of inconsistent evidence on the same issues.

Weighing this factor together with the other two factors, the Court concludes that the Movant has not met her burden to show that vacatur is warranted pursuant to Fed. R. Civ. Pro. 60(b)(1). In short, the prejudice to the Plaintiff along with the Movant's failure to demonstrate that the default was excusable overshadow Movant's showing as to a potential meritorious defense here.

**B. Motion to Vacate Pursuant to Fed. R. Civ. P. 60(b)(6)**

Rule 60(b)(6) grants authority to vacate an order or final judgment for "any other reason that justifies relief." *See* Fed. R. Civ. P. 60(b). But it applies only "when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule" and "there are extraordinary circumstances justifying relief." *Tapper v. Hearn*, 833 F.3d 166, 172 (2d Cir. 2016) (quoting *Nemaizer*, 793 F.2d at 63). "As (b)(6) applies only when no other subsection is available, grounds for relief may not be mistake, inadvertence, surprise or excusable neglect." *Nemaizer*,

---

[12] Having heard closing argument on the completed trial, the Court is actively working on its written decision on the merits of the Plaintiff's claim against the defendants who went to trial.

793 F.2d at 63. As Movant has appropriately moved under the excusable neglect prong of Rule 60(b)(1), relief here pursuant to the "catchall" provision of Rule 60(b)(6) is not available. In any event, for the reasons explained above, the Movant has not made a showing of extraordinary circumstances necessary to warrant relief under this provision.

## CONCLUSION

For the reasons discussed above, the Movant's motion to vacate the default is denied. The Plaintiff should settle an order on five days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon opposing counsel.

Dated: White Plains, New York
      January 30, 2023

                              */s/ Sean H. Lane*
                              UNITED STATES BANKRUPTCY JUDGE